Lawrence C. Ecoff, Esq. (SBN 143814)
Alberto J. Campain, Esq. (SBN 204068)
**ECOFF CAMPAIN TILLES & KAY, LLP**
A Limited Liability Partnership
280 South Beverly Drive, Suite 504
Beverly Hills, California 90212
Telephone:    (310) 887-1850
Facsimile:    (310) 887-1855
Email:    ecoff@ecofflaw.com
          campain@ecofflaw.com

Attorneys for Plaintiffs
PERRY DeLUNA and GREGORY O'NEILL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY DeLUNA, an individual, and GREGORY O'NEILL, an individual,<br><br>            Plaintiffs,<br><br>      vs.<br><br>UDR MARINA POINTE, LLC, a Delaware limited liability company; dba The Westerly on Lincoln; COLUMBIA DEBT RECOVERY, LLC, a California limited liability company dba Genesis Credit Management; EQUIFAX INFORMATION SERVICES, LLC, a Georgia limited liability company; EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio Corporation; and TRANSUNION LLC, a Delaware limited liability company,<br><br>            Defendants. | Case No.:  2:22-cv-00549<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.; CALIFORNIA CIVIL CODE §1785; UNFAIR COLLECTION PRACTICES; AND BUSINESS AND PROFESSIONS CODE §17200**<br><br>**[DEMAND FOR JURY TRIAL]** |

**COMES NOW** Plaintiffs, Perry DeLuna and Gregory O'Neill (collectively "Plaintiffs"), who hereby allege as follows:

# **INTRODUCTION**

1.     It is well known, and well established, that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the ability of a borrower to secure a loan, and the banking industry to properly investigate and evaluate a proposed borrower for lending.  A procedural mechanism exists for investigating and evaluating the credit worthiness, credit standing, and credit capacity of consumers.

2.     Part of that procedure is the role of consumer reporting agencies.  Such agencies have a significant role in assembling and evaluating a consumer's credit and other personal consumer information.

3.     In order to insure that reporting agencies exercise their responsibilities fairly, Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.  In so doing, Congress expressly determined that:

(1)     The banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2)     An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3)     Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4)    There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

4.    Plaintiffs Perry DeLuna and Gregory O'Neill are consumers as defined by the FCRA. Defendants UDR Marina and Columbia Debt Recovery made false and inaccurate reports to the credit bureaus in an attempt to damage Plaintiffs' credit. Even when informed of their improper and unlawful conduct, Defendants flatly refused to correct their actions and take remedial and necessary steps. So too did the credit reporting agencies refuse to correct their credit reports when informed of the false and inaccurate derogatory comments.

5.    Plaintiffs make these allegations on information and belief, except as otherwise noted, which Plaintiffs allege on personal knowledge.

6.    While many violations are described below with specificity, this Complaint alleges violations of the statute cited.

7.    Unless otherwise stated, all the conduct engaged in by Defendants took place in the State of California.

## PARTIES

8.    Plaintiff Perry DeLuna ("DeLuna") is a natural person who resides in the County of Los Angeles, State of California, whose credit report was affected by the conduct of the Defendants as alleged herein, and was damaged by such conduct. In addition, DeLuna is a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

9.    Plaintiff Gregory O'Neill ("O'Neill") is a natural person who resides in the County of Los Angeles, State of California, whose credit report was affected by the conduct of the Defendants as alleged herein, and was damaged by such conduct. In addition, O'Neill is a "consumer" as that term is defined by 15 U.S.C. §1681a(c). DeLuna and O'Neill shall e collectively referred to herein as "Plaintiffs."

10.    Plaintiffs are informed and believe, and based thereon allege, that Defendant UDR Marina Pointe, LLC ("UDR Marina"), is, and at all times mentioned herein was, a limited liability company formed and existing under the laws of the State of Delaware, and authorized to do business in the State of California by the filing of an Application for Registration with the California Secretary of State on August 10, 2010.  Plaintiffs are informed and believe, and based thereon allege, that UDR, Inc., is the manager of UDR Marina.  Plaintiffs are further informed and believe, and based thereon allege, that UDR Marina, at all relevant times, was doing business as The Westerly on Lincoln.

11.    Plaintiffs are informed and believe, and thereon allege, that Defendant Columbia Debt Recovery, LLC ("Columbia Debt Recovery"), is, and at all times mentioned herein was, a limited liability company formed and existing under the laws of the State of California with the filing of its Articles of Organization on October 30, 2017.  Plaintiffs are informed and believe, and based thereon allege, that Columbia Debt Recovery represents itself to be a debt collection agency.  Plaintiffs are further informed and believe, and based thereon allege, that Columbia Debt Recovery, at all relevant times, was doing business as Genesis Credit Management.

12.    Plaintiffs are informed and believe, and based thereon allege, that Equifax Information Services, LLC, and its parent Equifax, Inc, which may also hereinafter be referred to collectively as "Equifax," is a foreign limited liability company organized in the State of Georgia, and at all times relevant herein was authorized to do and was doing business in the State of California.

13.    Plaintiffs are informed and believe, and based thereon allege, that Experian Information Solutions, Inc., and its parent entities which may also hereinafter be referred to collectively as "Experian," is a foreign corporation incorporated in the State of Ohio, and at all times relevant herein was authorized to do and was doing business in the State of California.

14    Plaintiffs are informed and believe, and based thereon allege, that Transunion, LLC, and its associated entity Transunion Corp., which may also hereinafter be referred to collectively as "Trans Union," is a foreign limited liability company, organized in the State of Delaware, and at all times relevant herein was authorized to do and was doing business in the State of California.

15.    Plaintiffs are informed and believe, and based thereon allege, that UDR Marina and Columbia Debt Recovery are the agents, co-venturers, joint venturers, co-conspirators, employees or representatives of the other, and in acting in the manner alleged herein did so with the knowledge, ratification and consent of the other Defendant, and acted in concert with them.  Plaintiffs are further informed and believe, that each of the Defendants named herein engaged in wrongful conduct that is a cause of Plaintiffs' damages.

## **JURISDICTION AND VENUE**

16.    This Court has federal question jurisdiction because this case arises out of a violation of federal law, 15 U.S.C. §1681 et seq.  This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA").

17.    This court has discretionary supplemental jurisdiction over the Plaintiffs' state law claims.

18.    Venue is proper in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §1391 for the following reasons: (i) Plaintiffs reside in the County of Los Angeles, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.

19.    Venue is proper in this district, *inter alia*, pursuant to 28 U.S.C. § 1391(b), because Plaintiffs are informed and believe, and on that basis allege, that

a substantial part of the events or omissions giving rise to the claim occurred within this District, and has caused damage to Plaintiffs in this District.

## STATUTORY BACKGROUND

20.    The FCRA is a consumer protection statute which regulates the activities of credit reporting agencies and users of credit reports, and which provides certain rights to consumers affected by use of the collected information about them.

21.    Congress stated in the opening section of the FCRA that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

22.    Under the FCRA, the term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in the underwriting of credit transactions involving the consumer.

23.    The FCRA also defines the term "consumer reporting agency" to mean any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

24.    Finally, the FCRA defines "adverse action" an action taken or determination that is  (a) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 1681b(a)(3)(F)(ii) of this title; and (b) adverse to the interests of the consumer.

25.     The FCRA, 15 U.S.C. 1681s-2(A)(a), provides that any person shall not furnish information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

26.     Furthermore, 15 U.S.C. 1681s-2(A)(2) requires that when any person who has furnished information to a consumer reporting agency determines that the information is not accurate to "promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate."

## FACTUAL ALLEGATIONS

27.     At all times relevant herein, Plaintiffs were and are consumers, as defined by the relevant state and federal statutes.

28.     At all times relevant herein Plaintiffs were and are consumers of and a subject of credit reporting by Defendants.

29.     Plaintiffs were the victim of the issuance of false and inaccurate credit reporting by Defendants.

30.     Plaintiffs suffered false credit reporting and unreasonable maintenance of false adverse credit references by Defendants after Defendants had been notified of the false information entries.

31.     Plaintiffs also suffered negligent unfair collection activities by Defendants.

32.     Defendant Trans Union is a consumer reporting agency as defined by FCRA, 15 USC § 1681a(f), the California Consumer Credit Reporting Agencies Act codified in California Civil Code § 1785.3(d), and the California Investigative Consumer Reporting Agencies Act codified in California Civil Code § 1786.2(d).

33.     Defendant Equifax is a consumer reporting agency as defined by FCRA, 15 USC § 1681a(f), the California Consumer Credit Reporting Agencies Act codified in California Civil Code § 1785.3(d), and the California Investigative Consumer Reporting Agencies Act codified in California Civil Code § 1786.2(d).

34.     Defendant Experian is a consumer reporting agency as defined by FCRA, 15 USC § 1681a(f), the California Consumer Credit Reporting Agencies Act codified in California Civil Code § 1785.3(d), and the California Investigative Consumer Reporting Agencies Act codified in California Civil Code § 1786.2(d).

35.     In October 2018, O'Neill rented an apartment from UDR Marina at an apartment complex referred to as The Wesley on Lincoln, for the term of one year. DeLuna agreed to, and did, enter into a written Guaranty, obligating himself and guaranteeing the full and faithful performance under the terms of the lease.

36.     In or about April 2019, a dispute arose between UDR Marina and O'Neill such that UDR Marina filed an Unlawful Detainer Complaint in the Superior Court of the County of Los Angeles, Santa Monica Court, referred to as *UDR Marina Pointe, LLC v. Oneill, Case No. 19SMUD00940* (the "Underlying Action").

37.     On June 17, 2019, Defendant UDR Marina and O'Neill resolved the Underlying Action.  O'Neill agreed to vacate the premises by June 30, 2019, and tender payment in the amount of $6,786.00 to UDR Marina.  However, if O'Neill tendered payment in the sum of $3,000 by 5:00 p.m. on June 24, 2019, the balance would be forever waived and forgiven, and no further monies would be due or owing.  UDR Marina was also entitled to keep O'Neill's security deposit.  Upon receipt of payment, UDR Marina agreed to file a Notice of Satisfaction.  Based upon the agreement of the parties, the Court entered Judgment as stipulated.

38.     The following day, on June 18, 2019, O'Neill paid the $3,000 payment, as required under the terms of the parties' Stipulation, by way of a cashier's check, #9575625926.  As a result of such payment, no further monies were due or owing.

In addition, O'Neill vacated the premises on July 16, 2019, and UDR Marina acknowledged receipt of possession of the premises on July 17, 2019.

39.    Based upon the terms of the parties' Stipulation, the matter was fully and finally resolved, all amounts due and owing were paid, and Plaintiffs presumed the matter was then closed.

40.    Notwithstanding the terms of the parties' agreement, and the fact that no monies were due and owing from Plaintiffs to UDR Marina, beginning in or about August 2019, Plaintiffs began receiving notices of a balance due to UDR Marina, in the sum of $5,557.20.  Such statement reflected that the amount owed included non-payment of prior rent, in the amount of $5,557.58.   O'Neill received even another statement from UDR Marina, indicating that the balance due was $6,795.97, increasing the prior balance based upon rent due from July 31, 2019 through September 14, 2019, even though O'Neill had already vacated the premises.

41.    Thereafter, on September 3, 2019, DeLuna received a written communication from UDR Marina, representing a "2nd Notice of Balance due," and stating that a balance was due in the sum of $5,557.20.  Such notice further stated that if payment was not timely made it may be referred UDR Marina's collection agency for collection, and which would then be referred to credit bureaus, which would adversely impact Plaintiffs' credit rating.

42.    Immediately upon receiving such communication from UDR Marina, Plaintiff DeLuna telephoned UDR Marina, through its manager UDR, Inc., to remind them that the matter had been settled in court, and no monies were due or owing.  Upon calling Defendant UDR Marina, Plaintiff DeLuna spoke with a woman, who egregiously stated that she was familiar with the file and that she did not care what happened in court, she was sending the matter to collections.

43.    Based upon Defendant's own demand letter, UDR Marina knew, and was well informed, that if the matter was sent to collections, the credit bureaus would be notified that Plaintiffs had a delinquent account, even though they did not,

which would concomitantly impact Plaintiffs' credit score.

44. That same day that Plaintiff DeLuna spoke with UDR Marina, September 3, 2019, DeLuna sent UDR Marina correspondence informing them that the Underlying Action had been resolved by court order on June 17, 2019, all conditions were subsequently met, and the matter was closed. DeLuna further provided UDR Marina with a copy of the court's order, for its further reference. UDR Marina received such correspondence on September 6, 2019.

45. Plaintiffs heard nothing from UDR Marina in response to Plaintiff DeLuna's written communication and attachments.

46. In the beginning of 2021, DeLuna was in the process of obtaining loans, cash out financing, and refinance loans for various properties owned by DeLuna's companies. DeLuna's existing loans were at higher rates of interest, and DeLuna desired to take advantage of the significant rate decreases. Furthermore, and as to certain properties, DeLuna desire to obtain loans and cash proceeds to use. DeLuna contacted and hired a loan broker, Integr8tive Lending, to process the loans for DeLuna's six (6) properties. Based upon the loan program for the favorable rates of interest, DeLuna was required to have a minimum credit score of 720. At the commencement of his efforts to secure the loans, DeLuna had confirmed that his credit score was greater than 720.

47. As the transactions were all nearing completion for loan funding, in or about March 2021, DeLuna was informed that his credit score had plummeted due to a derogatory comment or collection action filed by Genesis Credit Management, the d/b/a of Columbia Debt Recovery with the various credit agencies. UDR Marina, through Columbia Debt Recovery, had issued a derogatory comment to Plaintiffs' credit reporting agencies, falsely representing that DeLuna and O'Neill had a past due balance of $6,462.00, that a collection account had been opened, and which had been reported March 2021.

48. The impact of such reporting had a material and adverse impact on

Plaintiffs' respective credit scores.  For instance, at the time of initiating the refinance and new loans, DeLuna's credit score was 753.  However, and after the derogatory comment, DeLuna's credit score decreased to a mid-score of 667.  As a result of the lower credit rating, and based upon the nature of the loans sought, DeLuna no longer qualified for the loan program, and thus was unable to obtain loans and refinance at such favorable rates of interest.

49.    Defendants' derogatory comments on Plaintiff DeLuna's credit damaged DeLuna as follows:

(a)    DeLuna was obtaining a refinance for a loan on a parcel of property on Rustling Oaks Dr., Agoura Hills, for $720,000.  The refinance loan interest rate was 4.25%. Due to the derogatory, and inaccurate, credit report, DeLuna no longer qualified for the loan program.   The only loan he was able to secure at the time, as a result,  was at 5.25%, or in other words one percent (1%) higher.  Based upon the increase in the rate of interest, DeLuna has been damaged in the amount of **$158,546.86.**

(b)    DeLuna was obtaining, and had been approved for, a refinance loan for a property on Bobwhite Circle, in Santa Clarita, in the amount of $200,000, at the rate of 4.625%.  The lender refused the refinance loan, based upon DeLuna's credit score.  DeLuna was later able to secure a loan in the amount of $225,000 at the rate of interest of 7.875%, simple interest and a five year term.  As a result of the terms of the new loan, DeLuna has been damaged in the approximate amount of **$61,582.**

(c)    DeLuna was obtaining, and had been approved, for a refinance loan for a property on Manchester Ave., Los Angeles, in the amount of $650,000, at the rate of 4.275%.  The lender refused the refinance loan, based upon DeLuna's credit score.  DeLuna's

existing loan was in the amount of $300,000, at 8% simple interest. As a result, DeLuna has been damaged in the minimum approximate amount of **$137,590.00**, not including his inability to obtain cash proceeds.

(d) DeLuna was obtaining, and had been approved, for a refinance loan for a property on Arcadia Lane, Palm Desert, in the amount of $115,000, at the rate of 5.0%. The lender refused the refinance loan, based upon DeLuna's credit score. DeLuna's current loan was in the principal amount of $92,326, at the rate of interest of 7.125%. As a result, DeLuna has been damaged in the minimum amount of $**45,501.00**, not including the loss of cash proceeds in the sum of **$22,674.00.**

(e) DeLuna was obtaining, and had been approved, for a loan for a property on Calle Cabra, Cathedral City, in the amount of $150,000, at the rate of 4.50%. The lender refused the loan based upon DeLuna's credit score, and DeLuna was denied the ability to obtain cash proceeds of $150,000. As a result, DeLuna has been damaged in the minimum amount of $**24,580.00**.

(f) DeLuna was obtaining, and had been approved, for a refinance loan for a property on Ferndell Lane, Victorville, in the amount of $120,000, at the rate of 5.25%. The lender refused the refinance loan, based upon DeLuna's credit score. The property had an existing loan in the amount of $115,408, at the rate of interest of 7.125%. As a result, DeLuna has been damaged in the amount of **$50,486.00.**

50. After being informed that the loans could no longer be obtained for five (5) of the six (6) properties, and one transaction was a particularly higher rate of

interest, both DeLuna and O'Neill contacted the consumer reporting agencies, Experian, Equifax and Trans Union, and informed them that the information was incorrect, and that there was no debt owed. Despite receiving such information, the inaccurate derogatory comment was not removed from O'Neill's credit report.

51.    Thereafter, Plaintiffs contacted the credit agencies themselves to dispute the derogatory comment in their credit files. DeLuna was ultimately able to obtain a removal of the derogatory comment from his credit files, however, the damage had already been done. The loans were lost, and could not be resurrected. As for O'Neill, the credit reporting agencies have still not removed the derogatory comment from his credit file, and therefore continue to damage him.

## FIRST CLAIM FOR RELIEF

### INTENTIONAL VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §1681s-2

### (By Plaintiffs Against Defendant UDR Marina)

52.    Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 51, inclusive, as if set forth in full.

53.    15 U.S.C. §1961s-2(a)(1)(A) provides that a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

54.    15 U.S.C. §1961s-2(a)(1)(B) further provides that a person shall not furnish information relating to a consumer to any consumer reporting agency if the person has been notified by the consumer that the information is inaccurate, and the information is, in fact, inaccurate.

55.    15 U.S.C. §1961s-2(a)(2) requires a person to correct and update information provided to a consumer reporting agency if the person determines that the information previously provided is inaccurate.

56.    In July 2019, pursuant to a stipulated agreement between Plaintiffs and

UDR Marina, Plaintiffs resolved any monies which were allegedly due and owing by Plaintiffs to UDR Marina. As of July 17, 2019, there were no sums due or owing, and no debt existing to report to any consumer reporting agency or credit agencies. Plaintiffs were not in default, nor a debtor of UDR Marina, as reflected by the parties' stipulated agreement in the Underlying Action.

57.    Despite same, UDR Marina, which is a person under the FCRA, and subject to the requirements of the FCRA, knowingly, wilfully and intentionally, reported a debt for Plaintiffs, which Defendant knew did not exist, to a consumer reporting agency, Columbia Debt Recovery, to initiate collection action against Plaintiffs and cause a report to be made to Plaintiffs' credit agencies.

58.    Defendant UDR Marina knew the reporting was false and inaccurate. UDR Marina was a party to the stipulated agreement between the parties in the Underlying Action. UDR Marina received, and acknowledged receipt of, all amounts due and owing, and agreed that no debt was due or owing from Plaintiffs to UDR Marina. Furthermore, Plaintiffs telephoned UDR Marina after receiving a threat that Plaintiffs would be reported to a consumer reporting agency, and Plaintiffs' credit file may be impacted, informing UDR Marina that any reporting would be false and inaccurate. UDR Marina responded that it did not care, and would still report Plaintiffs to the consumer reporting agency.

59.    Moreover, on September 3, 2019, Plaintiffs informed UDR Marina, in writing, that no debt existed, and that any alleged debt was extinguished as a result of the parties' stipulated agreement. UDR Marina, nevertheless, ignored such communication.

60.    Instead, UDR Marina reported Plaintiffs to a consumer reporting agency, Columbia Debt Recovery, with full knowledge that Columbia Debt Recovery would report a debt to Plaintiffs' credit reporting agencies, and thereby impact Plaintiffs' credit rating.

61.    As a proximate result of Defendant's conduct, Plaintiffs' credit file

received false and inaccurate derogatory comments.  Such comments resulted in reducing Plaintiffs' credit score.  In or about February 2021, Plaintiff DeLuna was in  the process of securing loans for six (6) properties.  The loan program required DeLuna to have, at least, a minimum credit score of 720.  The Defendant's conduct resulted in Plaintiff DeLuna's credit score being reduced to less than 720, and thus ineligible for the loan program.  DeLuna, therefore was unable to refinance or obtain loans for five or the six loans, and cash out proceeds as above alleged.

62.    DeLuna has been damaged in the amount of not less than $478,285, but according to proof at trial.  Furthermore, Plaintiff DeLuna has suffered anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial.  O'Neill continues to be damaged insofar as the derogatory comment has still not been removed from his credit file, despite demand therefore.

63.    As a result of each and every willful violation of the FCRA, Plaintiffs are entitled to recover from Defendant actual damages, punitive damages as the court may allow, and reasonable attorney's fees and costs incurred.

## SECOND CLAIM FOR RELIEF

### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2
### (By Plaintiffs Against Defendant UDR Marina)

64.     Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 51, inclusive, as if set forth in full.

65.    15 U.S.C. §1961s-2(a)(1)(A) provides that a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

66.    15 U.S.C. §1961s-2(a)(1)(B) further provides that a person shall not furnish information relating to a consumer to any consumer reporting agency if the

person has been notified by the consumer that the information is inaccurate, and the information is, in fact, inaccurate.

67.    15 U.S.C. §1961s-2(a)(2) requires a person to correct and update information provided to a consumer reporting agency if the person determines that the information previously provided is inaccurate.

68.    In July 2019, pursuant to a stipulated agreement between Plaintiffs and UDR Marina, Plaintiffs resolved any monies which were allegedly due and owing by Plaintiffs to UDR Marina.  As of July 17, 2019, there were no sums due or owing, and no debt existing to report to any consumer reporting agency or credit agencies.  Plaintiffs were not in default, nor a debtor of UDR Marina, as reflected by the parties' stipulated agreement in the Underlying Action.

69.    Despite same, UDR Marina, which is a person under the FCRA, and subject to the requirements of the FCRA, negligently reported a debt for Plaintiffs, which did not exist, to a consumer reporting agency, Columbia Debt Recovery, to initiate collection action against Plaintiffs and cause a report to be made to Plaintiffs' credit agencies.

70.    Once Defendants knew that the information and derogatory comment was inaccurate, Defendants were required to correct the inaccurate information, but negligently failed to do so.

71.    UDR Marina negligently reported Plaintiffs to a consumer reporting agency, Columbia Debt Recovery, with full knowledge that Columbia Debt Recovery would report a debt to Plaintiffs' credit reporting agencies.  Furthermore, Columbia Debt Recovery caused a report of a collection account against Plaintiffs to be made to Experian, Equifax and Trans Union, with full knowledge of UDR Marina.

72.    As a proximate result of Defendant's conduct, Plaintiffs' credit file received false and inaccurate derogatory comments.  Such comments resulted in reducing Plaintiffs' credit score.  In or about February 2021, Plaintiff DeLuna was

in  the process of securing loans for six (6) properties.  The loan program required DeLuna to have, at least, a minimum of 720 credit score.  The Defendant's conduct resulted in Plaintiff DeLuna's credit score being reduced to less than 720, and thus ineligible for the loan program.  DeLuna, therefore was unable to obtain the loans for five of the six loans, and with respect to the sixth loan he was required to pay one percentage point more for the life of the loan.

73.    As a proximate result of Defendant's conduct, DeLuna has been damaged in the amount of approximately $478,285, but according to proof at trial. Furthermore, Plaintiff DeLuna has suffered anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial.  O'Neill continues to be damaged insofar as the derogatory comment has still not been removed from his credit file, despite demand therefore.

74.    As a direct result of Defendant's negligence in violation of the FCRA, Plaintiffs are entitled to recover from Defendant actual damages and reasonable attorney's fees and costs incurred.

## THIRD CLAIM FOR RELIEF

### INTENTIONAL BREACH OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §1681e

### (By Plaintiffs Against Columbia Debt Recovery)

75.    Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 51, inclusive, as if set forth in full.

76.    Columbia Debt Recovery is a consumer reporting agency, as defined by 15 U.S.C. §1681.  As such, Columbia Debt Recovery was required to maintain reasonable procedures designed to avoid violations of the FCRA, and to ensure that it follows reasonable procedures to assume maximum possible accuracy of the consumer to whom Columbia Debt Recovery initiates reports.

77.    Plaintiffs assert that Columbia Debt Recovery did not maintain or have

reasonable procedures in place to ensure fair and accurate reporting.  Indeed, Defendant Columbia Debt Recovery could not have received information that a debt was due and owing by Plaintiffs since the alleged obligation had been resolved in court, promptly paid, and no amount was due or owing.  Plaintiffs are informed and believe that Defendant must have been informed that the derogatory comment was false and inaccurate, and yet Defendant still failed to take steps to correct and remove the derogatory comment from Plaintiffs' credit files.

78.    Columbia Debt Recovery intentionally and wilfully nevertheless reported an alleged debt of Plaintiffs, asserting derogatory comments, to Plaintiffs' credit reporting agencies.

79.    As a proximate result of Defendant's conduct, Plaintiffs' credit file received false and inaccurate derogatory comments.  Such comments resulted in reducing Plaintiffs' credit score.  In or about February 2021, Plaintiff DeLuna was in  the process of securing loans for six (6) properties.  The loan program required DeLuna to have, at least, a minimum of 720 credit score.  The Defendant's conduct resulted in Plaintiff DeLuna's credit score being reduced to less than 720, and thus ineligible for the loan program.  DeLuna, therefore was unable to obtain loans for five or the six properties, and with respect to the sixth loan he was required to pay one percentage point more for the life of the loan.

80.    As a proximate result of Defendant's conduct, DeLuna has been damaged in the amount of approximately $478,285, but according to proof at trial. Furthermore, Plaintiff DeLuna has suffered anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial.  O'Neill continues to be damaged insofar as the derogatory comment has still not been removed from his credit file, despite demand therefore.

81.    As a result of each and every willful violation of the FCRA, Plaintiffs are entitled to recover from Defendants actual damages, punitive damages as the court may allow, and reasonable attorney's fees and costs incurred.

## FOURTH CLAIM FOR RELIEF

### NEGLIGENT BREACH OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §1681e

### (By Both Plaintiffs Against Columbia Debt Recovery, and Plaintiff O'Neill Against Equifax, Trans Union and Experian)

82.    Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 51, inclusive, as if set forth in full.

83.    Columbia Debt Recovery is a consumer reporting agency, as defined by 15U.S.C. §1681.  As such, Columbia Debt Recovery was required to maintain reasonable procedures designed to avoid violations of the FCRA, and to ensure that it follows reasonable procedures to assume maximum possible accuracy of the consumer to whom Columbia Debt Recovery initiates reports.

84.    Plaintiffs assert that Columbia Debt Recovery did not maintain or have reasonable procedures in place to ensure fair and accurate reporting.  Indeed, Defendant Columbia Debt Recovery could not have received information that a debt was due and owing by Plaintiffs since the alleged obligation had been resolved in court, promptly paid, and no amount was due or owing.  When Columbia Debt Recovery received information relating to any purported debt, none existed.  Later, Defendant still failed to take steps to correct and remove the derogatory comment from the Plaintiffs' credit files.

85.    Columbia Debt Recovery nevertheless reported an alleged debt of Plaintiffs, asserting derogatory comments to Plaintiffs' credit reporting agencies.

86.    Furthermore, Plaintiff O'Neill asserts that Defendants Equifax, Trans Union and Experian failed to comply with the requirements of 15 U.S.C. 1681(e) and 1681s-2(a).

87.    Defendants Experian, Equifax and TransUnion, failed to properly investigate, reinvestigate and correct consumer credit reports concerning Plaintiff

O'Neill, which included inaccurate information, including information related to a debt that did not exist. Although Plaintiff O'Neill notified Defendants that he disputed the accuracy of the information Defendants were reporting and the information in Defendants' files on Plaintiff O'Neill, Defendants Experian, Equifax and Trans Union continued to report inaccurate information.

88. False credit reports have been issued by the consumer reporting agencies. Those consumer reports were prepared and published by the Defendant agencies and contain false information supplied UDA Marina and Columbia Debt Relief, and published further by the agencies onto other users and subscribers for use and reliance.

89. Plaintiffs advised Experian, Equifax and Trans Union of the false information on Plaintiffs' credit file, and demanded that the comment be removed from its consumer reports and files of and concerning Plaintiffs. Defendants did so as to Plaintiff DeLuna, but have failed and refused as to Plaintiff O'Neill.

90. Plaintiffs are informed and believe, and based thereon allege, that Experian, Equifax and Trans Union failed to properly reinvestigate Plaintiff's disputes and continued to prepare and issue false consumer reports in violation of the FCRA.

91. Plaintiffs are informed and believe, and based thereon allege, that Experian, Equifax and Trans Union took inadequate action to correct Plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

92. Plaintiffs are informed and believe, and based thereon allege, that Experian, Equifax and Trans Union failed to adopt and follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer credit reports, which they prepared and published to third persons, and other personal information, as required by the Fair Credit Reporting Act, which they compiled, used and manipulated, in order to prepare consumer credit reports, credit scores, risk

factors/denial codes and other economic and prediction data evaluations.

93.    Plaintiffs are informed and believe, and based thereon allege, that Experian, Equifax and Trans Union failed to adopt and follow reasonable procedures to assure the proper reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports and as contained in their consumer reporting data bank, as required by the Fair Credit Reporting Act.

94.    Plaintiffs are informed and believe, and based thereon allege, that Experian, Equifax and Trans Union have continually added, stored, maintained and disseminated personal and credit information in consumer reports they prepared and issued about Plaintiff O'Neill which was inaccurate, false, erroneous and misleading despite notice from Plaintiffs that such information was inaccurate.

95.    As a proximate result of Defendant's conduct, Plaintiffs' credit file received false and inaccurate derogatory comments.  Such comments resulted in reducing Plaintiffs' credit score.  In or about February 2021, Plaintiff DeLuna was in  the process of securing loans for six (6) properties.  The loan program required DeLuna to have, at least, a minimum of 720 credit score.  The Defendant's conduct resulted in Plaintiff DeLuna's credit score being reduced to less than 720, and thus ineligible for the loan program.  DeLuna, therefore was unable to secure loans for five of the six loans, and with respect to the sixth loan he was required to pay one percentage point more for the life of the loan.

96.    As a proximate result of Defendant's conduct, DeLuna has been damaged in the amount of approximately $478,285, but according to proof at trial.  Furthermore, Plaintiff DeLuna has suffered anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial.  O'Neill continues to be damaged insofar as the derogatory comment has still not been removed from his credit file, despite demand therefore.

97.    As a result of Defendants' negligence, and each and every negligent violation of the FCRA, Plaintiffs are entitled to recover from Defendants actual

1  damages and reasonable attorney's fees and costs incurred.

2

3  **FIFTH CLAIM FOR RELIEF**

4  **CALIFORNIA CIVIL CODE SECTION 1785**

5  **(By Both Plaintiffs Against Columbia Debt Recovery, and Plaintiff O'Neill**

6  **Against Equifax, Trans Union and Experian)**

7  98.   Plaintiff hereby incorporates, by this reference, each and every

8  allegation set forth in paragraphs 1 through 97, inclusive, as if set forth in full.

9  99.   Defendants negligently failed to comply with the requirements of

10  California Consumer Credit Reporting Act (CCRA) including but not limited to:

11  (a)   failing to comply with the requirements in California Civil Code

12  §1785.16;

13  (b)   failing to comply with the requirements in California Civil Code

14  §1785.16 (a and b); and

15  (c)   failing to comply with the requirements in California Civil Code

16  §1785.16 (d).

17  100.   Defendants Columbia Debt Recovery, Experian, Equifax and Trans

18  Union, prepared, issued and distributed and failed to investigate, reinvestigate and

19  correct consumer credit reports concerning Plaintiffs which included inaccurate

20  information, including information related to UDR Marina.

21  102.   As a proximate result of Defendant's conduct, Plaintiffs' credit file

22  received false and inaccurate derogatory comments, which was disseminated to third

23  parties.  Such comments resulted in reducing Plaintiffs' credit score.  In or about

24  February 2021, Plaintiff DeLuna was in  the process of securing loans for six (6)

25  properties.  The loan program required DeLuna to have, at least, a minimum of 720

26  credit score.  The Defendant's conduct resulted in Plaintiff DeLuna's credit score

27  being reduced to less than 720, and thus ineligible for the loan program.  DeLuna,

28  therefore was unable to obtain loans for five or the six loans, and with respect to the

sixth loan he was required to pay one percentage point more for the life of the loan.

103.   As a proximate result of Defendant's conduct, DeLuna has been damaged in the amount of approximately $478,285, but according to proof at trial. Furthermore, Plaintiff DeLuna has suffered anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial.  O'Neill continues to be damaged insofar as the derogatory comment has still not been removed from his credit file, despite demand therefore.

104.   The aforementioned acts of Defendants proximately caused Plaintiffs to suffer certain other incidental and consequential expenses and losses as set forth herein or as to be established at trial.

105.   Pursuant to California Civil Code § 1785.31(b), Plaintiffs are entitled to injunctive relief against the Defendants.

106.   Pursuant to California Civil Code § 1785.31(d), Plaintiffs are entitled to statutory award of attorneys fees against the Defendants upon prevailing.

107.   As a further proximate result of the aforementioned acts of Defendants, as alleged above, Plaintiffs have been harmed in that Plaintiffs have incurred attorneys fees necessary to pursue correction of their credit record and protection from further injury and to pursue this claim, and therefore Plaintiffs are entitled to their reasonable attorneys fees incurred in prosecution of this claim as allowed pursuant to California Civil Code § 1785.31(d) or otherwise allowed before this court.

## SIXTH CLAIM FOR RELIEF

### UNFAIR COLLECTION PRACTICE

### (By Both Plaintiffs Against UDR Marina and Columbia Debt Recovery)

108.   Plaintiff hereby incorporates, by this reference, each and every allegation set forth in paragraphs 1 through 107, inclusive, as if set forth in full.

109.   In doing some of the aforementioned acts, UDR Marina acted as or

facilitated conduct of a debt collector and have violated the Fair Debt Collection Practices Act ("FDCPA") and other Federal and State of California debt collection consumer protection statutes.

110.    Defendant Columbia Debt Recovery prepared, issued and distributed and failed to correct consumer credit reports concerning Plaintiffs which included inaccurate information, that Plaintiffs were indebted to Defendant UDR Marina, and for a debt allegedly not paid.

111.    In September 2019, Defendant UDR Marina forwarded communication to Plaintiffs threatening that a negative credit report might be sent to the credit reporting agencies if Plaintiffs did not pay an alleged debt which did not exist.

112.    Furthermore, Columbia Debt Recovery has asserted and sought to collect on a debt allegedly owed to UDR Marina, that did not, and does not, exist.

113.    Defendants engaged in unfair practices and a wrongful campaign to collect alleged indebtedness from Plaintiffs which Defendants knew or actively avoided knowing was not due from Plaintiffs and ignored Plaintiffs' disputes as to the collection account and further reported false credit reportings and communications to the consumer reporting agencies and attributed said information to Plaintiffs.

114.    The FDCPA is a strict liability statute.

115.    Defendants willfully violated the FDCPA

116.    Alternatively, Defendants negligently violated the FDCPA.

117.    As a further proximate result of the aforementioned acts of Defendants, as alleged above, Plaintiffs have been harmed in that Plaintiff DeLuna lost the ability to finance his real properties, and suffered from a higher interest rate and loss of loan proceeds.  Furthermore, Plaintiff DeLuna has suffered anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial.  Plaintiffs have incurred attorney's fees necessary to pursue correction of their credit record and protection from further injury and to

1  pursue this claim, and therefore Plaintiffs are entitled to their reasonable attorney's

2  fees incurred in prosecution of this claim as allowed pursuant to the FDCPA and

3  other federal and state statutes or otherwise allowed before this court.

4    118.   The aforementioned acts of Defendants were willful and malicious and

5  were done with fraud or oppression, and in reckless disregard of Plaintiffs' rights

6  and were intended to oppress and cause injury to Plaintiffs.  Plaintiffs are therefore

7  entitled to an award of punitive damages.

8

9  **SEVENTH CLAIM FOR RELIEF**

10  **UNLAWFUL BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA**

11  **BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.**

12  **(By Plaintiffs Against UDR Marina)**

13    119.   Plaintiff hereby incorporates, by this reference, each and every

14  allegation set forth in paragraphs 1 through 117, inclusive, as if set forth in full.

15    120.   Defendants UDR Marina and Columbia Debt Recovery prepared,

16  issued and distributed consumer credit reports concerning Plaintiffs which included

17  inaccurate information.

18    121.   UDR Marina failed to reasonably investigate and terminate the false

19  and inaccurate information, and passed on adverse credit information about

20  Plaintiffs to the credit agencies and others, failed to reasonably correct the false

21  credit information and reporting and harassed and injured Plaintiffs with issuance of

22  account statements and or collection efforts regarding the false credit accounts.

23    122.   Defendant engaged in a pattern and practice of fraud against and

24  reckless neglect of the Plaintiffs' consumers and other consumers similarly situated.

25    123.   Despite the known risk and past pattern of negligent issuance of false

26  credit and pattern of reckless failure to investigate and terminate false credit

27  accounts and/or correct adverse false credit information references about consumers,

28  Defendants engaged in a policy, pattern and practice of tolerating and failing to

control such widespread abuse of the consumers and violation of the consumer credit and consumer credit reporting laws protecting consumers such as Plaintiffs.

124.    These and other unlawful acts of Defendant are as alleged herein, including but not limited to the violations of federal and state law precluding known creation, issuance, maintenance and distribution of false credit information.

125.    The aforementioned pattern of intentional and/or reckless conduct and violation of consumer protection laws was committed in violation of California Business and Professions Code § 17200 et seq constitute unlawful, unfair, deceptive and/or anti-competitive business practices.

126.    As a result of such unlawful acts and unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of Plaintiffs and similarly situated consumers and otherwise affected individuals.

127.    Plaintiffs are persons of interest because they individually and personally has been deprived of the right of continued access to fair credit and freedom from false damage to their reputation and credit score and has been otherwise deprived of rights and fair treatment as a result of Defendants' conduct.

128.    It would be unjust to permit Defendants to retain the benefits of such unlawful business practices.

129.    Moreover, it would be unjust to permit Defendants to continue to compete unfairly with other California businesses, to impair the ability of others who do not engage in such unlawful conduct to enter into the market as credit issuers or reporters, to harm the stability of the California consumer and financial market and to commit fraud and damage against California consumers.

130.    As a result of Defendants' unlawful and unfair business practices, Defendants are liable for injunctive relief and to pay restitution to persons of interest pursuant to California Business and Professions Code § 17203.

131.    As a further proximate result of the aforementioned acts of Defendants, as alleged above, Plaintiffs have been harmed in that Plaintiffs have incurred

attorney's fees necessary to pursue correction of their credit record and protection from further injury and to pursue this claim, and therefore Plaintiffs are entitled to their reasonable attorney's fees incurred in prosecution of this claim as allowed pursuant to California Business and Professions Code § 17200 net seq. or as otherwise allowed before this court.

132.   The aforementioned acts of Defendants were willful and malicious and were done with fraud or oppression, and in reckless disregard of Plaintiffs' rights and were intended to oppress and cause injury to Plaintiffs.  Plaintiffs are therefore entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

### **FIRST AND THIRD CLAIMS FOR RELIEF**

1.   For compensatory damages in the amount of approximately $478,285, but according to proof at trial;

2.   For damages relating to Plaintiff DeLuna's anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial;

3.   For an award of exemplary and punitive damages;

### **SECOND AND FOURTH CLAIMS FOR RELIEF**

1.   For compensatory damages in the amount of approximately $478,285, but according to proof at trial;

2.   For damages relating to Plaintiff DeLuna's anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial;

COMPLAINT

## FIFTH CLAIM FOR RELIEF

1. For compensatory damages in the amount of approximately $478,285, but according to proof at trial;

2. For damages relating to Plaintiff DeLuna's anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial;

3. For injunctive relief to enjoin Defendants' conduct;

## SIXTH CLAIM FOR RELIEF

1. For compensatory damages in the amount of approximately $478,285, but according to proof at trial;

2. For damages relating to Plaintiff DeLuna's anxiety, mental anguish, emotional distress, and damages to his emotional and mental well-being, all according to proof at trial;

3. For an award of exemplary and punitive damages;

## SEVENTH CLAIM FOR RELIEF

1. For restitution according to proof at trial;

2. For injunctive relief to enjoin Defendants' conduct;

3. For an award of exemplary and punitive damages;

///
///
///
///
///
///
///
///

## AS TO ALL CLAIMS FOR RELIEF

1.  For costs of suit herein;

2.  For an award of reasonable attorney's fees incurred; and

3.  For such other and further relief as the Court may deem just and proper.

Dated:  January 25, 2022          ECOFF CAMPAIN TILLES & KAY, LLP


                                  /s/ *Lawrence C. Ecoff*
                                  LAWRENCE C. ECOFF, ESQ.
                                  ALBERTO J. CAMPAIN, ESQ.

                                  Attorneys for Plaintiffs
                                  PERRY DeLUNA and GREGORY O'NEILL


## REQUEST FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiffs hereby demand a trial by jury on all issues properly triable by a jury.


Dated:  January 25, 2022          ECOFF CAMPAIN TILLES & KAY, LLP


                                  /s/ *Lawrence C. Ecoff*
                                  LAWRENCE C. ECOFF, ESQ.
                                  ALBERTO J. CAMPAIN, ESQ.

                                  Attorneys for Plaintiffs
                                  PERRY DeLUNA and GREGORY O'NEILL